**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| PATRICK ONEAL CLEMONS, | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | 1:22-CV-1002-ML |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| Defendant. | § | |

**OPINION & ORDER**

This is an action for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Acting Commissioner of the Social Security Administration, Kilolo Kijakazi, in her official capacity ("the Commissioner"), denying disability benefits to Plaintiff Patrick Oneal Clemons ("Clemons"). Before the court are Plaintiff's Complaint (Dkt. 6); the Commissioner's Answer (Dkt. 9); Plaintiff's Opening Brief in Support of Claim (Dkt. 13); Defendant's Brief in Support of the Commissioner's Decision (Dkt. 14); Plaintiff's Reply Brief (Dkt. 16); and the Record of the Social Security administrative hearing (Dkt. 11).

Both parties have waived the right to proceed before a District Judge and have consented, pursuant to 28 U.S.C. § 636(c), to have all proceedings in the case, including the entry of final judgment, conducted by the Magistrate Judge. Dkt. 15 Having considered the briefing, the record below, and the case file as a whole, the Magistrate Court now enters the following Opinion and Order.

I.      PROCEDURAL HISTORY

On July 22, 2020,[1] Clemons filed applications for Title XVI Supplemental Security Income benefits, alleging disability beginning December 16, 2017. Administrative Transcript ("T") 12. The claim was denied initially and upon reconsideration. *Id.* at 13. Later, Clemons filed a written request for a hearing. *Id.* On January 27, 2022, Administrative Law Judge William E. Sampson ("ALJ") held a telephonic hearing, at which Clemons and his counsel appeared, as well as an impartial vocational expert (VE). *Id.* The ALJ issued an unfavorable decision on March 2, 2022. T 23.

Clemons appealed. *See* T at 1. The Appeals Council denied his request for review of the ALJ's decision on August 8, 2022, thereby making the ALJ's decision the Commissioner's final administrative decision. *Id.* Clemons filed this action seeking judicial review of the ALJ's decision. Dkt. 1.

II.     APPLICABLE LAW

   A.   Standard of Review

Judicial review of the ALJ's decision is limited. The district court reviews: (1) whether the decision was supported by substantial evidence; and (2) if so, whether the Commissioner applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Copeland*, 771 F.3d at 923; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). It is the role of the Commissioner, and not the courts,

---

[1] Clemons's brief erroneously states Clemons filed applications for Title XVI Supplemental Security Income benefits on August 10, 2020. Dkt. 13 at 1.

to resolve conflicts in the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). As a result, the court "cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

**B.  Evaluation Process and Burden of Proof**

Disability is defined as the "inability to engage in substantial gainful activity by reasons of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and (5) whether the impairment or combination of impairments prevents the claimant from doing any other

work. 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett*, 67 F.3d at 565. Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is able to perform. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden using opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

### III.     THE ALJ'S DECISION

In the written decision, the ALJ determined as a threshold matter that because Clemons protectively filed his application for supplemental security income on July 22, 2020, alleging disability beginning December 16, 2017, the period for adjudication began on July 22, 2020. T 12. The ALJ then engaged in the standard five-step sequential process, finding at step one that Clemons had not engaged in substantial gainful activity since July 22, 2020. T 15.

At step two, the ALJ found Clemons has the following severe impairments: coronary artery disease; status-post coronary artery bypass grafting; obstructive sleep apnea; hypertension; and obesity. T 15. The ALJ also found Clemons has one non-severe impairment: anxiety. T 15. The ALJ found Clemons's medically determinable mental impairment of anxiety does not cause more than minimal limitation on Clemons's ability to perform basic mental work activities and is therefore non-severe. T 15–16. In making this determination, the ALJ considered the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders:

understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. T 15–16. Because Clemons's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas, the ALJ determined it is non-severe. T 16 (citing 20 C.F.R. § 416.920a(d)(1)).

At step three, the ALJ determined Clemons does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1526). T 16.

Before reaching step four, the ALJ determined that Clemons retains the residual functional capacity ("RFC")[2] to:

> lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand and walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday but would need to stand for 6 minutes after every hour of sitting. He can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl.

T 16. The ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. T 16. In making this RFC assessment, the ALJ determined that Clemons's subjective allegations about the disabling symptomatology were out of proportion to the actual objective medical findings in the record. T 17.

---

[2] RFC is defined as the most an individual can still do despite their limitations. 20 C.F.R. § 404.1545. The responsibility to determine a claimant's RFC belongs to the ALJ. *Id.* § 404.1546; *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite their physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of the claimant's impairments, even those that are nonsevere, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight to be given to the evidence, however, is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).

Continuing to step four of the sequential evaluation process, the ALJ found Clemons could not perform his past relevant work as a trash collector, which requires heavy exertion. T. 21. Accordingly, the ALJ found Clemons unable to perform past relevant work. T 21. The ALJ then noted that Clemons was a younger individual, age 47, on the date the application was filed. T 21–22. Additionally, the ALJ noted Clemons has the equivalent of a high school education and that transferability of job skills was not material to the determination of disability because Clemons's past relevant work was unskilled. T 22.

Moving on to step five, and relying on the testimony of the VE, the ALJ found there are jobs that exist in significant numbers in the national economy that Clemons can perform. T 22–23. Finding Clemons capable of performing other work, the ALJ concluded that Clemons has not been under a disability, as defined in the Social Security Act, from July 22, 2020, through the date the application was filed. Tr. 23.

Clemons now appeals from the ALJ's determination that he is not disabled.

## IV. ANALYSIS

### A. Issues Presented

Clemons presents one issue: Whether the ALJ's RFC determination is supported by substantial evidence.

### B. Discussion

Clemons, contending the ALJ did not properly evaluate the opinion of his primary care physician, argues that the ALJ's RFC determination is not supported by substantial evidence. Dkt. 13 at 5. He complains specifically that the ALJ erred by not performing sufficient supportability and consistency analyses. *Id.* at 6, 11.

Twenty C.F.R. § 404.1520c governs RFC determinations for all claims filed on or after March 27, 2017. The rule addresses how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's RFC and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings. See 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule). The rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Id.* § 404.1520c(a).

Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.*, § 404.1520c(c). The Commissioner must articulate how persuasive she finds each of the opinions in the record and explain her conclusions about the supportability and consistency factors. *Id.*, § 404.1520c(b)(2).

Remand for lack of substantial evidence is appropriate where a spare articulation of the supportability and consistency factors makes it impossible for the court to determine whether the ALJ's finding is supported by substantial evidence or is unable to reconcile conflicting findings. *See Reese v. Saul*, No. 4:19-CV-2787, 2020 U.S. Dist. LEXIS 217576, at *7 (S.D. Tex. Nov. 3, 2020) (vacating decision for lack of substantial evidence where ALJ did not explain discrepancy between the claimant's need of a cane to ambulate and the ability to walk or stand for two hours, as the "Court cannot speculate as to how these findings should be reconciled"); *Harmon v. U.S.*

*Comm'r*, No. 6:14-cv-02660, 2015 U.S. Dist. LEXIS 168580, at *7 (W.D. La. Nov. 17, 2015) (concluding reversal and remand was required where ALJ failed to explain basis of decision, making it impossible for the court to determine whether the ALJ provided the correct legal standard or whether the finding was supported by substantial evidence).

When the ALJ proceeds past step two and commits error, "remand is warranted only if the ALJ's error was harmful." *Miller v. Kijakazi*, No. 22-60541, 2023 U.S. App. LEXIS 1118, at *3 (5th Cir. Jan. 18, 2023) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)). The Fifth Circuit recently specified that, to show prejudice from an ALJ's failure to comply with 20 C.F.R. § 404.1520c articulation requirements, the plaintiff must "show that if the ALJ had given further explanation [of the medical opinions at issue], then she would have adopted them." *Miller*, 2023 U.S. App. LEXIS 1118, at *4. Otherwise, the plaintiff would "essentially [be] asking [the court] to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which [the court] cannot do." *Id.* (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)). Thus, *Miller* is a specific application of the broader principle that harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).

1. *Supportability*

Clemons argues the ALJ legally erred by "fail[ing] to conduct a proper supportability analysis in reaching his conclusion." Dkt. 13 at 6. Clemons contends that the ALJ's finding the Clemons is capable of sedentary RFC in contradiction to the opined limitations of his primary care physician, Todd Thacker, D.O. ("Dr. Thacker"). *Id.* at 4–5 (citing T 16). The Commissioner responds that the "ALJ properly evaluated the opinion evidence" and that "[t]he ALJ based his

FRC determination on the credible medical, testimonial, and documentary evidence of record." Dkt. 14 at 5.

Clemons contends that the ALJ did not properly explain how he considered supportability but offered a conclusory statement. *Id.* at 7. Clemons suggests that the ALJ's determination that Dr. Thacker's opinions were not "supported by [Dr. Thacker's] own progress notes," is an insufficient explanation of how the ALJ considered supportability. *Id.* Clemons then cites medical records that show among other things: pericardiocentesis in May 2018; complaint of pericardial effusion in May 2018; echocardiogram showing effusion and early tamponade in June 2018; referral to a cardiologist; seen for recurrent pericarditis also in June 2018; complaint of chest pain in February 2019; on top of his history of hypertension and severe coronary artery disease. *Id.* at 7–10 (citing the Transcript). Specifically, Clemons complains that the ALJ did not discuss the above countervailing evidence. *Id.* at 10.

The Commissioner counters that "[w]hile the ALJ did not specifically discuss every piece of evidence related to [Clemons's] impairments, the ALJ adequately considered and discussed Dr. Thacker's treatment records." Dkt. 14 at 12 (citing *Heck v. Colvin*, 674 F. App'x. 411, 415 (5th Cir. 2017) (per curiam). The Commissioner argues that the ALJ "considered all of the evidence in the record and this included the evidence not cited in the decision as well as the evidence that was specifically cited and discussed." *Id.* at 13. The Commissioner further points out that "there are no formalistic rules governing how an ALJ must articulate his decision." *Id.* (quoting *Hubbard v. Comm'r of Soc. Sec.*, 4:20-cv-588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). The Commissioner also points out that Dr. Thacker's progress notes, starting in early 2021, indicate Clemons's coronary artery disease was stable, his hypertension generally controlled, and his other

9


conditions, including his sleep apnea and extremity edema, stemmed from Clemons's noncompliance with prescribed treatment (E.g., T 21). Dkt. 14 at 11.

"The Social Security regulations require the Commissioner (and in turn an ALJ acting for the Commissioner) to articulate 'how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [a given] case record.'" *Camarillo v. Comm'r of Soc. Sec.*, No. SA-20-CV-01019-ESC, 2021 U.S. Dist. LEXIS 220719, at *17–18 (W.D. Tex. 2021) (quoting 20 C.F.R. § 404.1520c(b)). The ALJ is not required to articulate how she considered each medical opinion contained in a medical source statement from a given medical provider, 20 C.F.R. § 404.1520c(b)(2), but the ALJ must provide some explanation for her reasons for rejecting a medical opinion of record. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). While the ALJ need not comment on every piece of evidence, she must "build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 987 (5th Cir. 2010) (per curiam). The ALJ did so.

The ALJ determined that Dr. Thacker's assessment of Clemons's limitations was "not supported by or consistent with Dr. Thacker's progress notes, which show the claimant's coronary artery disease was stable, his hypertension generally controlled, and his breakthrough symptoms of sleep apnea and lower extremity edema due to non-compliance with prescribed treatment." T 21.

Clemons's objects to the ALJ's conclusion and complains that "the actual medical visit records are much more complex than the ALJ implies." Dkt. 13 at 7. But the ALJ accounted for many instances of which Clemons complains. For example, Clemons states that he "underwent pericardiocentesis" in May 2018. *Id.* The ALJ discussed this: Clemons "returned to the hospital in May 2018 with pericardial effusion[] and underwent successful pericardiocentesis." T 18. Clemons

saw Dr. Thacker on February 8, 2019, and Dr. Thacker's notes state Clemons "reported no further angina or dyspnea but [did] complain of chest wall-post surgical pain." Dkt. 13 at 8. The ALJ noted: "In April of 2019, the claimant denied angina and dyspnea, but had residual chest pain post-surgery although sternum was well-healed." T 18. Clemons complains that after the same appointment, "Dr. Thacker noted that [Clemons] could not perform his usual work because it required upper body work." Dkt. 13 at 8 (citing T 1029). But as the ALJ pointed out, Clemons's chart also included that after completing "cardiac rehab, [] he may be able to return to work." T 18 (citing Exhibit B5F, 201, which is one page earlier in the same document Clemons cites (*compare* T 1028 *with* T 201)). The ALJ's analysis of Dr. Thacker's treatment records goes on for nearly five pages and includes several instances of the ALJ acknowledging Clemons's complaints, Dr. Thacker's observations, and objective findings. *See* T 19 (citing T 407–11) (Clemons's "blood pressure was normal . . .Although [Clemons] reported lower extremity swelling, there was no evidence of lower extremity edema on clinical exam").

Clemons complains that the ALJ failed to build a logical bridge between the evidence and his final determination. Dkt. 13 at 10 (citing *Camarillo v. Comm'r of Soc. Sec.*, No. SA-20-CV-1019-ESC, 2021 U.S. Dist. LEXIS 220719, *6 (W.D. Tex. Nov. 16, 2021). Clemons points specifically to his "ongoing cardiac concerns, pain, fatigue, and lack physical wellbeing," including "hypertensive blood pressure, low oxygen readings on his sleep study, and weight gain." *Id.* Again, "[c]onflicts in the evidence are for the Secretary and not the courts to resolve." *Fitch v. Colvin*, 653 F. App'x 345, 349 (5th Cir. 2016) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). The ALJ did not discuss every piece of evidence, *see Price*, 401 F. App'x 987, but his analysis engaged the relevant evidence. The ALJ was "not persuaded by Dr. Thacker's September 2020 opinion because it is not supported by his own progressive notes which show essentially

11

normal physical exam findings[3] beyond obesity, and it is not consistent with [Clemons's] own reports that he had no chest pain or shortness of breath."[4] T 19. Contrary to Clemons's assertion that the ALJ provided only a conclusory statement, the ALJ's statement accurately sums up the ALJ's five-paragraph analysis of Dr. Thacker's notes and treatment records. Thus, the ALJ provided some explanation of his reasons for rejecting Dr. Thacker's opinion, *see Loza v. Apfel*, 219 F.3d at 395, and the ALJ provided a logical bridge. The ALJ therefore did not err in his supportability analysis.

    2. *Consistency*

Second, Clemons argues that the ALJ legally erred in his consistency analysis. Dkt. 13 at 11. The ALJ stated that Dr. Thacker's opinion "is not consistent with the claimant's own reports that he had no chest pain or shortness of breath." *Id.* (quoting T 19). Clemons argues the "ALJ's only conclusion as to consistency" does not square with Clemons's complaints of "chest pain at nearly every medical visit for over three years," contending it "is inexplicable how the ALJ was able to conclude otherwise." *Id.* Clemons then argues that the ALJ's evaluation is deficient because it does not compare or contrast Dr. Thacker's opinion or other opinions or medical evidence in the record as required by regulations. *Id.*

"ALJs must 'articulate how they considered medical opinions' from all medical sources, such articulation need only explain how the supportability and consistency factors were considered." *Williams v. Kijakazi*, No. 23-30035, 2023 U.S. App. LEXIS 23658, at *7–8 (5th Cir. 2023) (quoting 20 C.F.R. § 404.1520c(b)–(c)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical

---

[3] E.g., normal blood pressure in June 2018, August, 2019, July 2020. T 18, 19.
[4] E.g., Clemons denied chest pain and shortness of breath in June 2018, April 2019, August 2019, July 2020. *Id.*

12

finding(s) will be." 20 C.F.R. § 416.920c. "Only if differing medical opinions are 'equally well-supported' (the first factor) and 'consistent with the record' (the second factor) must the ALJ articulate how he considered, *inter alia*, the relationship between the medical source and the claimant (the third factor)." *Williams*, 2023 U.S. App. LEXIS 23658, at *8 (quoting § 404.1520c(b)(3), (c)). Here, the ALJ made no specific finding about whether differing medical opinions are equally well-supported and consistent with the record (Clemons does not challenge the lack of this finding on appeal).[5] Thus, the ALJ was not required to explain how he considered the relationship between the medical sources and the claimant. 20 C.F.R. § 404.1520c(c).

Clemons's consistency argument is seemingly the same as his supportability argument. His complaints boil down to the ALJ not employing the terms "consistent" or "inconsistent" or "not consistent" to Clemons's satisfaction. Dkt. 13 at 11 ("The ALJ's only conclusion as to consistency was, "it is not consistent with the claimant's own reports that he had no chest pain or shortness of breath."). Clemons contends that "this 'evaluation' is deficient" because it does not "compare or contrast Dr. Thacker's opinions to other opinions or medical evidence within the record as required by the regulations." *Id.*

But Clemons misapprehends the law and the record. A "case will not be remanded simply because the ALJ did not use 'magic words.'" *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (quoting *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). Clemons complains that the ALJ reached only one conclusion as to consistency. Dkt. 13 at 11. But the regulations do not require the ALJ to reach a specific number of conclusions as to consistency, nor do they require an ALJ to support a conclusion by employing a specific term a specific number of times.

---

[5] Notably, the ALJ concluded that Dr. Thacker's April 2019 and October 2019 letters regarding Clemons's ability to work and his disability status did not meet the requirements of a medical opinion as defined by 20 C.F.R. § 416.913(a)(2). T 18. The ALJ apparently found Dr. Thacker's September 2020 medical source statement a valid medical opinion. *See* T 19.

Clemons then complains that the ALJ insufficiently evaluated an echocardiogram performed on July 16, 2018, pointing out that it "indicated dilated cardiomyopathy." Dkt. 13 at 11. But the ALJ discussed the results of a subsequent echocardiogram that showed "normal left ventricular (LV) size and systolic function, mild concentric left ventricular hypertrophy, normal diastolic function, aortic stenosis without sclerosis and no pericardial effusion" and that "[l]eft ventricular ejection fraction was essentially normal." T 18. This discussion came immediately after the ALJ's discussion of Clemons's April 2018 bypass surgery and May 2018 follow-up treatment for pericardial effusion. Thus, the ALJ's analysis of the relevant evidence built a consistent logical bridge between an earlier time at which Clemons was experiencing more severe issues and a later date at which the issues appeared generally normal based on an objective echocardiogram.

The second instance that Clemons points to as an example of inconsistency fails. Clemons notes that on August 1, 2018, he saw Doctor Phu Thai Vo, M.D. ("Dr. Vo") to whom he "complained of constant chest pain at a level of six to seven out of ten." Dkt. 13 at 11 (citing T 354). The ALJ evaluates "consistency between different medical opinions across the record." *Arnett v. Kijakazi*, No. 1:21-CV-1187-RP, 2023 U.S. Dist. LEXIS 71782, at *14 (W.D. Tex. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)). Thus, the ALJ's evaluation is limited to the objective medical evidence and supporting explanations that the medical provider relied on in finding the plaintiff's limitations. *See* 20 C.F.R. § 404.1520(c)(1). Objective medical evidence includes "medical signs, laboratory findings, or both" but does not include diagnosis. *See* 20 C.F.R. § 416.913(a)(1), (a)(3).

Clemons's complaints to Dr. Vo do not amount to medical evidence. And the undersigned notes that Dr. Vo's post-examination notes, which include Clemons's vitals, reflect: "Cardiac-wise and pulmonary-wise, the claimant has no apparent limitations." T 356. Thus, Clemons's complaint

14

that the ALJ did not incorporate his complaints to Dr. Vo is unavailing. The undersigned concludes that the ALJ provided an analysis, supported by more than a scintilla of evidence, that was consistent with Clemons's objective medical records.

*3. Prejudice*

This Court may not reverse an ALJ's decision unless the claimant shows that the purported error caused her prejudice—that the error "produced a different outcome in her case." *Keel*, 986 F.3d at 557. "The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error." *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

Because the undersigned concludes that the ALJ did not err, the court need not conduct a prejudice analysis.

**C. CONCLUSION**

Clemons does not agree with the Commissioner's final determination. But the ALJ did not commit legal error on either supportability or consistency, and his decision is based on more than a scintilla of evidence. Indeed, while he did not comment on every piece of evidence, [6] he provided a thorough analysis of Dr. Thacker's notes and Clemons's treatment records. Clemons is unhappy that the ALJ declined to adopt Dr. Thacker's medical source statement wholesale, but the ALJ was "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Arnett*, 2023 U.S. Dist. LEXIS 71782, at *16 (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). Thus, the undersigned finds no reason to disturb the Commissioner's determination.[7]

---

[6] "The fact that the ALJ cited certain evidence that he felt supported his decision does not mean that he failed to consider all of the other evidence in the record. To the contrary, his decision states expressly that it was made '[a]fter careful consideration of all the evidence,' and we see no reason or evidence to dispute his assertion." *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (unpublished).

[7] "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## V.     ORDER

It is the court's duty to determine whether the Commissioner's decision is supported by substantial evidence and was reached through proper legal standards.  *See Copeland*, 771 F.3d at 923. Based on the foregoing analysis, the Commissioner's decision is **AFFIRMED** in all aspects.

SIGNED February 9, 2024.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE